and we'll now proceed to hear argument in case number 22-2687. Gallegos or Gallegos Trinidad versus U.S. and perhaps counsel can enlighten us on which name your client prefers and how he prefers to pronounce it.  Good afternoon, Your Honors. My name is Karen Hoffman representing Mr. Gallegos Trinidad. He uses both last names together? I believe so. Okay. Yes. Very good. So, do you wish to reserve any time for rebuttal? Yes, if I could reserve three minutes for rebuttal, please. Please. Your Honors, Rolando Gallegos Trinidad is a land rights defender, a member of the Wahve indigenous group in Oaxaca, Mexico, and he is part of an assembly that was formed in opposition to a series of mega projects, including a wind farm. We're familiar with those facts. I think one question that's of interest to us is, is there a pattern of practice claim in this case? And if so, how is it? I mean, it looks as if it has shifted ground some. Is it about being indigenous? Is it about being a land use activist? Is it about the combination of those things? Because at various times, those have been talked about separately or together. Yes, Your Honor. It is both of those things. He is an indigenous man, but he is also bringing this claim based on his political opinion in opposition to these projects. And there is a pattern of practice argument that has been raised at the immigration judge level, at the BIA, and in the brief before this court. But where did you—I mean, the government says you didn't raise it. Let's talk about waiver first. The government says you didn't raise it, and I don't think you've replied to that argument. So what does that tell us? Sure. Just to note, we did file a response to the government's letter today, which was the soonest we could file it, noting that it is simply not true that Mr. Gallego's Trinidad failed to raise the pattern of practice argument in his brief. He describes throughout the brief an ongoing struggle by land defenders, including himself and his assembly, against corporate development in their region and the resulting attacks on them by the pro-development PRI mayor and her associates. He also provided country conditions evidence, tying this dispute to disputes in other parts of Mexico, in which similarly situated individuals were also persecuted for their political opinion. So let's say you've preserved it before our court. We also have an exhaustion issue of whether you preserved it before the IJ. And when I look at the IJ's decision, the IJ said the evidence is replete with information that provides proof that indigenous communities in Mexico faced an uphill battle politically in persuading local and state governments on wind farms, megaprojects, and these protests have continued. So the IJ is considering both of these things together, and it seems like maybe you've got a complaint that it didn't separate these things out. So you filed a brief to the BIA saying the IJ was focused on the indigenous issue, but didn't focus enough on the political opinion. But in fact, the IJ considered both of them. The board said, look, you know, it's wrong. The IJ specifically says he's looking at this as a political opinion claim. So it's not at all obvious to me why it matters. You can consider one, you consider the other, consider both of them together. The IJ is looking at both of these things, and the board is looking at both of these things. So why should we? It just seems like it's incorrect that they didn't consider it, and it's probably not exhausted if you thought it was really essential to consider them separately versus together. Sure. Well, there's a few things in there to address. So just to note that the government themselves conceded in their 28-J letter that the IJ did not address the pattern or practice claim. Right, but that was conceived of, if you go on to read the next sentence, as distinctly as a political claim. Sure. I don't take it that they've given up that there was political opinion was together with the indigenous aspect. You're correct. The IJ finds that the petitioner has a political opinion of resistance to development because of its environmental impact and impact on his family's fishing traditions. He found that the petitioner will continue to participate as an activist in his town's assembly and in support of land defense. Just as a general matter, the IJ's decision is devoid of citations to the record. It makes it, frankly, a little tricky to tease out which parts of his decision are relating to an indigenous claim versus a political opinion claim, findings of fact from conclusions of law, and well-founded fear as opposed to past persecution. So that does make it, I think, somewhat amorphous to analyze, and the BIA doesn't really, I think it would be impossible for them to pull it apart. True, but some of the responsibility is that your own briefing didn't really make clear, is this one, is this two, is it both? It seemed like you walked away from the pattern and practice argument, right? You're faulting the IJ for, you know, not for repeatedly characterizing this as a pattern and practice claim as opposed to an individual claim. So, and I understand why strategically you might have done that, but I don't know how that then is the fault of the BIA for not understanding that you were making the opposite argument. I don't think we've walked away from it. I think that throughout the briefing to the, well, throughout the testimony and evidence presented to the IJ, as well as- It's the BIA, though, that's the focus. Sure, as well as to the BIA, that we have, that Mr. Gallegos Trinidad has continued to present extensive evidence that there is a pattern or practice. He may not have used the words pattern or practice, but essentially he's shown throughout that there's been similarly situated- But we do have a limited ability here to correct an error of the BIA that they never had the chance to address because a petitioner hasn't raised it. So, let's say we agree that you raised it with the IJ, but then you didn't perhaps raise it fully with the BIA. Where does that leave us on this point? Respectfully, I wouldn't concede that we didn't raise it at the BIA. I understand that. Let's suppose we think you haven't fully exhausted it. Then what do we do with this claim? Well, I guess then there's the- Not conceding that, of course, that we didn't raise it, but you have some case law, like the Seventh Circuit decision in Banks, where the petitioner never explicitly said anything about pattern or practice, but the court found that because he had demonstrated that the government was conducting systemic attacks against his people, that that was sufficient to establish a pattern or practice claim. In the Third Circuit, you have Sukwon Putra, where the immigration judge found that the petitioner had not established a well-founded fear, but never addressed whether pattern or practice of persecution exists. I mean, I think it's sort of all, to use the IJ's word, speculative, to say what the situation would be if the petitioner hadn't made the argument to the BIA, because he did so extensively throughout his brief. So, for example, on pages 3 to 5, well, this is of the Third Circuit brief, but this is also noted in his BIA brief, which I could also cite, that there was harm against him and other protesters, including his brother-in-law, Issaoul, getting doused in gasoline, and that these incidents are part of an ongoing struggle across the Isthmus between pro-development PRI supporters and the community members opposed to the projects. Issaoul described the PRI as waging a campaign against us, and then seven months before the petitioner's merits hearing, several activists from his assembly were shot and seriously injured by associates of the PRI mayor. A few months later, another member of the assembly opposed to the project was killed by a municipal police officer, and this was all... To the extent the pattern of practice claim is in here, what's the relevance that, okay, the brother-in-law is clearly getting these threats, but his wife, who like, you know, like him, not one of the leaders or anything, is living there safely? So how does that bear on whether this claim ought to succeed or not? Sure. Well, you know, I would like to analogize to the Herrera-Reyes case where the petitioner in that case was not directly physically harmed. In fact, when she fled her country, she left family members behind, and they were not harmed. And in the case Gebrehiwat, in this court, similarly the petitioner also had family members who were left behind who were not threatened. I mean, in Herrera-Reyes, the court had kind of misunderstood, thought that there was an imminence requirement here. Are you making the argument that the IJ misunderstood the legal standard here? Well, I think the legal standard, because this case, the merits hearing in this case took place before the court's decision in Herrera-Reyes. Okay. And then the BIA has the case up, and it cites Herrera-Reyes, and it says that it thinks that this was, you know, was concrete and menacing enough. I'm looking at the bottom of the page. What is it? Does not dispute, does not argue the erosive level of persecution. Rather, it says that the immigration judge didn't consider the cumulative harm. Respondent doesn't indicate what that harm was. So he hasn't shown the past, isn't entitled to the past persecution. He doesn't get the presumption. He says he just didn't get meaningful consideration. So what in the BIA's opinion is inconsistent with Herrera-Reyes? Well, I think there are a lot of parallels between this case and Herrera-Reyes that the BIA ignores. So similar to Herrera-Reyes petitioner, Mr. Gallego's Trinidad was part of a group of activists against the local government. He actively participated in this opposition. He patrolled the area as a guard in Herrera-Reyes. The petitioner's convoy was shot at and her family's house was burned. But the key thing was in Herrera-Reyes, there was a requirement of imminence. And it was suggesting that the threats were not enough. And here, the court, the BIA says, you know, there were threats. But we're just finding that, okay, there weren't physical harm. But we don't see that the threats actually rose to the level of persecution. You're not making the argument that they did. You're just saying the immigration judge didn't add them all up properly. Correct. Yeah, we're saying that he didn't consider them cumulatively. And, I mean, the imminence, by any objective analysis we would submit, you know, this petitioner, Mr. Gallego's Trinidad, going to a protest, witnessing other protesters being beaten, having his brother-in-law be soaked in gasoline. And then even in the months leading up to his merits hearing, other activists in his same assembly being killed and shot at because of their political opinion, which is identical to Mr. Gallego's Trinidad. Of course, we would submit that those do rise to the level of concrete and menacing. And just to add, this was not waived below because prior counsel at the merits hearing attempted to elicit testimony from the petitioner about the concreteness and how menacing the harm was. And the immigration judge said, I don't need to hear about that. Because he had decided, apparently, that this was only about a well-founded fear. There was no physical harm. And so it appears, not to say that we know what went on in his mind, and I see I'm out of time, but that he had conclusively decided that because there was no physical harm, this wasn't a past persecution claim and didn't care to elicit further testimony. But the board here issued its own opinion. It didn't just wholesale incorporate the IG's opinion. And so we're reviewing the board's opinion. Where does the board require more than concrete and menacing? I think it's not a matter that they're not applying the correct standard. I think it's a matter that substantive evidence doesn't support their conclusion when they look at it. Okay, but if they're applying the correct standard, then we're under the deferential substantial evidence test. Are you saying there's not substantial evidence to support the finding that this was not concrete and menacing enough? I am, yes. That's an uphill climb, but the way you frame your argument, that's up to you. And just in conclusion, because there's not substantive evidence to support the board's conclusion, we would ask that this court remand the case. Thank you. May it please the court, Matthew George for the Attorney General. I'd like to start with the waiver argument that we made regarding the pattern or practice claim. Council just said an interesting statement that they may not have used the words, and that's really the key issue here. They've never even used the words practice, I think, anywhere in their brief to the court. They do use the word pattern, I believe, but they never cite the regulation. They never cite this court's cases dealing with pattern or practice. They've never put the government, the court, anyone on notice that they're making some sort of pattern or practice argument to the court, or that the agency has erred in some way by overlooking a pattern or practice. They have a section heading that says that similarly situated individuals have been persecuted for their political opinion, and they have examples that they cite back to their statement of facts when they talk about the people who were persecuted in the months leading up to the merits hearing for the IJ. Why is that not enough? Are we talking about the one incident that they're citing? This is page 15 near the bottom of the brief, heading number three. Petitioner established his fear is objectively reasonable because similarly situated individuals, including family members, have been threatened, shot, killed, or disappeared on account of their political opinion. So it doesn't use the magic words pattern or practice, but substantively that's what it's about. But it's not using the court's language of the pervasive, systematic, those sorts of things. Again, it doesn't cite the regulation. It doesn't cite any cases to really put certainly the government on notice to really look at that claim, and if their claim is that either we want to discuss this on the merits or the agency has erred in some way by overlooking it, simply citing to that evidence is not sufficient to put us on notice to be able to do something about it. That's really the key. So when they say on page 18 that there is a pattern of violent state repression directed toward members of land rights protesters, then that was not enough to put the government on notice of a pattern or practice argument? No. Pattern or practice. No, it just says pattern. It just says pattern. I know, but if a pattern allegation is enough or a practice allegation is enough, it doesn't have to be a pattern and practice. Why isn't referring to a pattern of violent state repression enough? Because, again, they don't cite the regulation. Let's assume we disagree with you about a magic words requirement. Let's assume that there's some pattern in here. Okay. What pattern should we view in the case? In terms of the evidence? You're not conceding the point. Right. I understand the degree. Yes. We've got some concerns about that argument. So what's your fallback? If there's a pattern that's alleged in this brief, then what's the problem? Is it that there's an exhaustion problem? Is it that it's not the right pattern? Is it that the pattern was properly considered? Well, some of it exactly is what is the pattern or practice. Some of that is defining what is the sort of the underlying group that we're talking about. I think, as the court pointed out earlier, it does sort of shift. And so the regulation that defines pattern or practice requires the similarly situated individuals that's tied to a nexus, tied to a protected ground. So what is the protected ground here? Is it something that's generic? Is this I have a political opinion? Because the evidence that's in the record is kind of all over the place. Some of it talks about these indigenous. Some of it talks about land rights. But this, you know, Judge Freeman is referring to page 18. A pattern of violent state repression directed towards indigenous and peasant land defense movements resisting corporate development of natural resources throughout Mexico. So it makes a reference to the indigenous and peasants. It makes a reference to land defense movements. Well, that's the first time that's been defined like that is in the opening brief. And so for the court to say now the agency has aired when that's never been presented to it squarely is kind of a bridge too far. It's really holding the agency to a standard that was never offered to it. It sort of puts the cart before the horse, if you will. If that's what they wanted to argue, certainly the board brief would have been the opportunity to do that, to really present that argument so that the board consider it. And then if the board didn't, then they can raise it to the court and say, look, the board has aired by not considering my argument. Whether the immigration judge should have or shouldn't, I do think they make some an argument in the written closing about pattern of practice. To me, as I read the record, the claim sort of shifts over time. And I think that's some of the concerns petitioner had with some of the statements that the immigration judge made. The immigration judge may have thought it was one type of case at the outset. It then the evidence is presented and then the immigration judge analyzed the actual claim made. And there is that shifting between sort of political opinion, indigenous individuals, whether it's separate or both. The immigration judge did consider, I think it's at least four different bases in this case. Where is the identity, the indigenous to the extent that separate political opinion and then particular social group? And said, looking at all of those, it's still speculative what the harm is going to be in this case. So to some extent, the immigration judge did consider it. And then if that wasn't the way petitioner wanted the agency to consider it, that should have been squarely presented to the board. And that wasn't done here. There was the argument about that the immigration judge only considered the indigenous in a pattern or practice. And the board said, no, that's not what the immigration judge did here. And even if that is what their argument is, if that's the error they wanted to have the court address, that's what they should have argued. That's not what they argue in their opening brief, that the board misconstrued my argument or something along those lines. It's kind of this all like, here's a bunch of evidence. Here you go. I don't know. Sort of. You know, our standard is is so forgiving with regard to what a petitioner must present to the BIA in order to preserve an argument for review here. So given given that permissive standard, you know, it need not be direct. They need to just give it give the board, you know, an inkling of what they're arguing. Given that, then why shouldn't it be deemed exhausted? Well, the board didn't address it here other than saying that the. I mean, how is the government supposed to defend that if there's nothing? And then what is the proper remedy then for would be to remand for the board to to address it in the first instance? If that were the argument they were making, yes, that's not the argument they make to the court, that the board overlooked a pattern of practice argument. So we're sort of torn between those two things of. How is the court supposed to say there's an error if the board didn't address it and they don't make that argument? They don't say that's the error. They just go right into like if the court is saying a pattern of practice on the merits. I think they're saying they say they made the argument to the immigration judge. The immigration judge didn't didn't address it. And then they said to the to the BIA, you know, you should correct this error of the immigration judge and not and not addressing it. And then they're sort of repeating that here. Right. Is that your understanding of their argument? I don't think they said to the board that the immigration judge made an error. They said that the immigration judge only made a pattern of practice claim regarding the indigenous claim. And the board did address that argument and said that's not what the immigration judge did. The board said the immigration judge addressed political opinion. And so if that is somehow not the argument that they made or more misconstrued that their opening brief to this court is the time to to raise that court. Yes. So finish that point. I was going to say also they didn't file a reply brief in this case after after the government pointed out that they had waived the argument at minimum. And that would have been a great opportunity to really clarify the arguments they were making. So let me ask you about another point your friend makes, which is. The immigration judge uses the word imminent, right? Then we disapprove of an imminence requirement in her areas. Now, the BIA does not use imminence, but it does say it says something about his experience not being sufficiently severe and concomitant with those threats. Now, it's a strange phrasing. It kind of suggests did the threats have to eventuate in physical harm? It goes on to say he does not dispute that there was no physical harm and he was threatened only, which her area says you don't have to have physical harm. He says he does not argue their threats rose level persecution. Rather, he says he didn't consider cumulative harm, but the respondent does not indicate what the harm was. But again, like what more do you need to say about threats? I'm trying to understand how to interpret the key passage in the BIA's opinion. Is it just trying to paper over the fact that the IJ made the decision under the incorrect legal standard here? Well, what the the immigration judge uses similar language about the severe and concomitant. What the agency is looking at in both instances is the analysis the court says to do is consider the threats in conjunction with the other experiences. And that's the immigration judge to say your experiences are not severe and concomitant with the threats. And so that's that's the analysis the court says. Does that mean that the threats don't count unless they eventuate in comparably severe harm? Is that what concomitant means? To me, it's it's looking at that spectrum or cumulative type of analysis that the court says to do. And in Herrera, where it says the aggregate effect of a petitioner's experiences, the court is directing the agency to look at all of this together. And that's what the agency did here is saying, looking at your experiences, it's not concomitant with the threats or the threats are not concomitant with the experiences to rise to the level of persecution. And if you look at Herrera. What does the word concomitant mean in this context? What's a good definition? Like aligned with perhaps that's kind of how I would read it or I just look it up in the dictionary. Does it require that the threats eventuate in harm or just that the threats be pretty severe? Well, it's whatever. I mean, it would sort of the nature of I think it would have to be in line with how the court has analyzed it in Herrera and Doe and looking at experiences and what's going on around those threats to really consider. Do they rise to the match? Do they align all those sorts of things? I mean, if you look at Herrera, it's really a sort of a pattern of things escalating. Maybe an escalation is probably the best word or way to look at that. That's not what we have here. We have sort of random events. We have the roadblock incidents where a petitioner was turned around a roadblock, was never harmed. We have that he went to Juchitan or the other city and saw other protesters being harmed, but he himself was never harmed. So what do you have to show them? I mean, you fault his argument for saying things are happening around him, but never to him. What kind of nexus do you think is needed to show? One more like the fact patterns in Herrera and Doe where there's a much tighter pattern of behavior around petitioner himself. And like in Herrera, she was a legislative official, I believe. And so there were things to her family. There was a house being burned. There was her colleagues that she directly worked with were being threatened. Likewise in Doe, it was an angry mob showed up at this individual's house. I believe they coated him in kerosene, were beating him with rods and things like that. So something more necessarily, maybe that's one end of the spectrum. I don't know that needs to be on the end, but there needs to be more of a pattern or an escalation. So let me just clarify when you're talking about the there needs to be more and using Doe as an example. Are you talking about establishing past persecution so as to raise a presumption of future persecution? Are you talking about the pattern or practice theory for a well-founded future persecution? I'm talking about past persecution, whether the threats and I'm not even sure really what threats we're talking about. And I know the immigration judge said he felt threatened. And then the board just simply said he was threatened. I'm not sure what the threats exactly are in this case. I'm looking at the two incidents that petitioner discusses of the roadblock and going to the other town. I don't know in the record he's ever threatened in the way sort of someone shouting something at him or maybe physically threatening him with something. And then would you agree that to establish a well-founded fear of future persecution based on a pattern or practice theory? One need not have established threats rising to any level in his own experience. I guess that would be a completely separate. And as we argue in this case, because he didn't establish past persecution, it's entirely his burden to establish a well-founded fear. All right. So then your argument is in the context, what happened to him and the roadblocks, etc. is not, wasn't that severe? That it would be different if he were threatened with we're going to pour gasoline over you and light you on fire the way we did with your brother-in-law. Right. The brother-in-law's case would certainly be a much closer case. I would hope the brother-in-law's case would be clear. I can't say for sure what the board would do, but most likely. Based on what we know now, you'd have a hard time defending denying relief to him. Yes. As I've stated, substantial evidence supports the agency's finding that Petitioner failed to establish past persecution. It also supports the agency's finding that he failed to establish a well-founded fear. And the agency did not err in its consideration of the CAC claim. For those reasons, the court should deny the petition. Thank you. Ms. Hoffman, you have three minutes. Thank you. Just to briefly address several of the points raised by my opponent. As the court mentioned, the petitioner did raise that there was a pattern of persecution both at the IJA level, at the BIA level, and at this court in his opening brief. Why didn't you fly over? I know you don't have to, but how come? I didn't enter an appearance until very recently. I can't speak to that. However, I would note that in Herrera-Reyes, there was no reply brief filed. Since there was so much discussion of that case, just to reiterate, this was not a case where, in this petitioner's case, he was stopped at a roadblock and turned back, and that's the sum total of all the harm that happened to him. Yes, his brother-in-law was doused in gasoline, but he was also at protests where other protesters were beaten in front of him. There were other activists in his cohort in the assembly that were killed and shot. Are you arguing this as part of the pattern of persecution to establish a well-founded fear, or are you arguing this in support primarily of your past persecution argument? Both, Your Honor, because as this court articulated in Nisimba, they applied Herrera-Reyes to the well-founded fear standard and noted that, as the court knows, it's not a checklist, and it's not a requirement that physical violence or any other single type of mistreatment is a required element. And, of course, Herrera-Reyes had to do with past persecution, but in Nisimba, this court applies it to a well-founded fear of future persecution, so we're arguing as to both. Just to note, because this was a question the court had in terms of what was raised in the BIA brief, whether this argument of pattern of practice was waived, throughout the BIA brief, the petitioner states that the immigration judge did not give full and fair consideration to the respondent's claim that what he experienced would amount to future persecution on account of his political opinion, that the IJ should have considered viewpoints within the population as further evidence of ongoing political conflict, described a campaign of the PRI allies of political repression, including attacks against assembly members. I think the distinction between his indigenous identity and the political opinion claim is not the core issue of this case. On both accounts, he faces future persecution, and we argue past persecution as well, but to the extent that there's a question over whether the political opinion argument was waived as to pattern of practice, again, throughout the BIA brief, the petitioner presented those arguments. As the opposing counsel, as the government noted, it is a spectrum. It doesn't have to be one certain type of persecution to qualify, and here you do see an escalating pattern of behavior among the opposition, among the Mexican government officials, against petitioner and similarly situated individuals. And so for that reason, again, because this argument was raised at every level, and petitioner has not waived it, and again, as your honor noted, it is a lenient standard in terms of exhaustion, even if he didn't say the words, the phrase, pattern of practice, or cite the applicable regulation, he did make the arguments throughout and has not waived them. And therefore the IJ and the BIA's decisions were not supported by substantive evidence. Thank you. To thank both counsel for arguing and presenting this case, and especially Ms. Hoffman for stepping in at a relatively late date, this court will stand adjourned.